# 24-558 (L);
## 24-561 (X)

### In the
## United States Court of Appeals
### For the Second Circuit



REMI LABA,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

JBO WORLDWIDE SUPPLY PTY LTD,

*Defendant-Appellee-Cross-Appellant,*

*(See inside cover for continuation of caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFF-APPELLANT-CROSS-APPELLEE

WUERSCH & GERING LLP
100 Wall Street, 10th Floor
New York, New York 10005
(212) 509-6311

*- and -*

MCCUE SUSSMANE ZAPFEL &
   COHEN P.C.
420 Lexington Avenue, Suite 2250
New York, New York 10170
(212) 931-5500

*Attorneys for Plaintiff-Appellant-
   Cross-Appellee*

———————————————————

– and –

ORANGE BUTTERFLY HOLDINGS (MAURITIUS) INTERNATIONAL LIMITED, PERICLES LANTZ, BRAND ESSENCE HOSPITALITY GROUP LLC, DBA BAGATELLE, WILHELM LIEBENBERG, CAROLINE SIROIS, IAIN BANNER, ROOIBOS LIMITED, WAYNE BEBB, NATURALLY OUT OF AFRICA PERFECTLY NATURAL PTY LTD, MARTIN BERGH, NOOA CALIFORNIA, LLC, GEORGES KERN and JOHN DOES 1-5,

*Defendants.*

———————————————————

# **<u>TABLE OF CONTENTS</u>**

Page

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ....................................................................1

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ..............................2

STATEMENT OF THE CASE.........................................................................2

    A. Statement of the Facts...........................................................................2

RELEVANT PROCEDURAL HISTORY ...........................................................7

  I.    Magistrate Judge's Parker's Report and Recommendation ...........................9

  II.   The District Court's Opinion ......................................................................12

SUMMARY OF THE ARGUMENT ..................................................................13

STANDARD OF REVIEW ............................................................................14

ARGUMENT ...............................................................................................15

I.  The District Court Failed To Apply The Correct Standard Before
Imposing Sanctions Under Its Inherent Power ...............................................15

    A. Judge Parker Failed to Find that Plaintiff's and Plaintiff's Attorney
    did not Present a Claim under Color of Law ....................................................15

    B. Holding an Evidentiary Hearing on a Document Does not Excuse the
    Court from Making Requisite Findings............................................................16

    C. Judge Parker's Reliance on Other District Court Sanctions Rulings is
    Misplaced........................................................................................................18

i

II.  Judge Parker Erred By Applying Impermissible Hindsight To Rule
     Plaintiff And His Counsel Filed The Breach Claim In Bad Faith ......................20

     A. Bad Faith is a Rare Event in Litigation .........................................................20

     B. Judge Parker Allowed Hindsight to Infect the Sanctions Issue ...................21

     C. The Record Supports that Plaintiff's Action Started and was
        Maintained in Good Faith .............................................................................25

III. Judge Parker Failed To Hold Defendant To Its Burden Of Clear
     And Convincing Evidence .................................................................................29

IV.  Judge Parker Conflated The Standard Of Bad Faith With
     That Of Negligence ............................................................................................31

V.   Judge Parker Inappropriately Granted Relief Against Counsel That Was
     Never Sought ......................................................................................................33

     CONCLUSION ....................................................................................................35

     CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7) .................................37

ii

# TABLE OF AUTHORITIES

Page(s)

Cases

*Benjamin v. Fosdick Mach. Tool Co.*,
No. 11-CV-00571, 2013 WL 3784139 (W.D.N.Y. July 18, 2013) ........................................33

*Berns v. EMI Music Publ'g, Inc.*,
No. 95 Civ. 8130, 1999 WL 1029711 (S.D.N.Y. Nov. 10, 1999) ........................................33

*Browning Debenture Holders Committee v. DASA Corp.*,
560 F.2d 1078 (2d Cir. 1977) ..................................................................... 20-21, 32

*Cerruti 1881 S.A. v. Cerruti, Inc.*,
169 F.R.D. 573 (S.D.N.Y. 1996)..........................................................................18

*Chambers v. NASCO, Inc.*,
501 U.S. 32, 111 S.Ct. 2121 (1991) ............................................................... passim

*Colorado v. New Mexico*,
467 U.S. 310, 104 S.Ct. 2433 (1984) ..................................................................29

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384, 110 S.Ct. 2447 (1990) ............................................................ 14, 32

*Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*,
782 F.2d 329 (2d. Cir. 1986) ..............................................................................16

*Enmon v. Prospect Capital Corp.*,
675 F.3d 138 (2d Cir. 2012) ..............................................................................15

*Esther Creative Group, LLC v. Gabel*,
901 N.Y.S.2d 906 (N.Y. Sup. Ct. 2009) ............................................................10

*In re Pennie & Edmonds LLP*,
323 F.3d 86 (2d Cir. 2003) ................................................................................10

*Int'l Techs. Marketing, Inc. v. Verint Sys. Ltd.*,
991 F.3d 361 (2d Cir. 2021) ........................................................................ 16, 17

*Lawrence v. City of New York*,
 No. 15 Civ. 8947, 2018 WL 3611963 (S.D.N.Y. July 27, 2018) ................ 18, 19

*Liebowitz v. Bandshell Artist Mgmt.*,
 6 F. 4th 267 (2d Cir. 2021) ........................................................................17

*Liebowitz v. Bandshell Artist Mgmt.*,
 No. 20 Civ. 2304, 2021 WL 3118938 (2d Cir. July 23, 2021) ..........................17

*MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*,
 73 F.3d 1253 (2d Cir. 1996) .......................................................................20

*Mackler v. Cohen*,
 225 F.3d 136 (2d Cir. 2000) .......................................................................34

*Majestic Farms Supply Ltd. v. Service Riding Apparel, Ltd.*,
 137 A.D.2d 501, 524 N.Y.S.2d 245 (App. Div. 2d Dep't 1988) .......................28

*Matter of Express Indus. & Term. Corp. v. New York State Dep't of Transp.*,
 93 N.Y.2d 584, 693 N.Y.S.2d 857 (1999) ....................................................28

*Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*,
 55 F.3d 34 (2d Cir. 1995) ..........................................................................29

*Nemeroff v. Abelson*,
 620 F.2d 339 (2d Cir. 1980) .......................................................................15

*Oliveri v. Thompson*,
 803 F. 2d 1265 (2d Cir. 1986) ....................................... 10, 20, 21, 22

*Residential Funding Corp., v. DeGeorge Fin. Corp.*,
 306 F.3d 99 (2d Cir. 2002) .........................................................................32

*Rossbach v. Montefiore Med. Ctr.*,
 81 F.4th 124 (2d Cir. 2023) ....................................................... 17, 32

*Rossbach v. Montefiore Med. Ctr.*,
 No. 19 Civ. 5758 (DLC), 2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021) ....... 16-17

*Rybner v. Cannon Design, Inc.*,
 No. 95 Civ. 0279 (SS), 1996 WL 470668 (S.D.N.Y. Aug. 20, 1996) ......... 18, 19

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
    194 F.3d 323 (2d Cir. 1999) ........................................................................ passim

*Sussman v. Bank of Israel*,
    56 F.3d 450 (2d Cir. 1995) ........................................................................30

*Ted Lapidus, S.A., v. Vann*,
    112 F.3d 91 (2d Cir. 1997) ........................................................................34

*United States v. Chimurenga*,
    760 F.2d 400 (2d Cir. 1985) ........................................................................29

*United States v. Int'l Brotherhood of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991) ........................................................................23

*United States v. Seltzer*,
    227 F.3d 36 (2d Cir. 2000) ........................................................................ 21, 24

*Virginia Props. v. T-Mobile Ne., LLC*,
    865 F.3d 110 (2d Cir. 2017) ........................................................................ 14, 20, 25

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
    564 F.3d 110 (2d Cir. 2009) ........................................................................14

*Yukos Capital S.A.R.L. v. Feldman*,
    977 F.3d (2d Cir. 2020) ........................................................................ 18, 29

Statutes

17 U.S.C. § 411(a) ........................................................................17

18 U.S.C. § 1927 ........................................................................9

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1332 ........................................................................1

28 U.S.C. § 1927 ........................................................................7-8, 10, 34-35

Rules

Fed. R. App. P. 32(a)(7)(B) ........................................................................37

Fed. R. App. P. 32(a)(7)(C) ........................................................................37

Fed. R. Civ. P. 7(b)(1)(B)-(C) ...................................................................33

Fed. R. Civ. P. 11 ........................................................................................9

Fed. R. Civ. P. 41 ......................................................................................33

Fed. R. Civ. P. 54(d) ..............................................................................9, 29

Fed. R. Civ. P. 54(d)(2) ..............................................................................9

S.D.N.Y. L.R. 7.1(1) .................................................................................33

## I.   <u>PRELIMINARY STATEMENT</u>

Plaintiff-Appellant Remi Laba ("Laba" or "Plaintiff") appeals from a final judgment (JA. 1353-1388; 1408-1411[1]) entered pursuant to a decision by the United States District Court for the Southern District of New York (Hellerstein, J.) affirming the report and recommendation of Judge Parker for the imposition of sanctions awarding attorneys' fees jointly and severally against Remi Laba and Kenneth Sussmane and recommending that Laba's counsel be required to take a total of five hours of ethics and ESI training under the court's inherent power. [JA-1387; 1408-1411.]

## II.   <u>JURISDICTIONAL STATEMENT</u>

The court below had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. Final judgment was entered in the court below on February 12, 2024. [JA-1412-22.] Plaintiff filed a timely notice of appeal on March 13, 2024. [JA-69, Dkt. 385.]

The appeal is from a final judgment that disposes of all of Plaintiff's and Defendant's claims in this action.

---

[1] All references to "JA" are to the parties' Joint Appendix filed herewith.

1

### III.   STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

1. Did the district court properly adopt the report and recommendations of the magistrate judge (Parker, J.) that Laba's allegations were knowingly false, given that no evidence was provided demonstrating how the alleged contract was falsified?

2. Did the magistrate judge apply the correct legal standards on a motion for sanctions?

3. Did the magistrate judge apply hindsight and rely on facts outside of the record in support of the imposition of joint and several sanction of attorneys fees and nonmonetary sanctions?

4. Did the district court properly affirm the magistrate judge's recommendation that sanctions should be awarded and attorneys' fees imposed against Plaintiff?

### IV.   STATEMENT OF THE CASE

#### A. Statement of the Facts

Laba, the Plaintiff-Appellant, is an experienced executive and entrepreneur in the hospitality industry and was co-President of Bagatelle Group, Inc., the owner of an international chain of restaurants. [JA-71-72, at ¶12.]  JBO Worldwide Supply Ltd., Defendant-Cross-Appellant ("JBO" or "Defendant") is a Proprietary Limited Company organized under the laws of South Africa with its principal place of business in Pretoria, South Africa.   [JA-70, at ¶4.] JBO, along with a

number of its affiliated companies, including its parent co-Defendant Orange Butterfly Holdings International Limited ("Orange") operated and licensed the Coco Safar System of luxury coffee cafes, espresso bars and capsule retail emporia which serve luxury coffee, Rooibos tea, baked goods, patisseries and confectionaries. [JA-72, at ¶13.]

In February 2019, Plaintiff and JBO's acting Managing Director, Wilhelm Liebenberg, conferred and agreed to a finder's fee for an introduction to Advanced Tastes Company Ltd. ("Advanced Tastes") for a licensing agreement to develop Coco Safar in Saudi Arabia [JA-329, ¶6]. Plaintiff and Defendant spoke at length about the terms of such a licensing deal. [JA-331, ¶22]. Thereafter, Plaintiff scouted sites and helped to determine costs and budget estimates for a Coco Safar pop-up store in Saudi Arabia. [JA-331, ¶22].

During the course of this Plaintiff's ground work, Plaintiff introduced Defendant to Advanced Tastes. [JA-329, ¶7.] On April 9, 2022, Plaintiff sent an invoice to Defendant for 20% of the payment received by Defendant - $160,000 - as well as a draft of a long-form finder's fee agreement dated as of March 1, 2019 (the "Long Form Agreement"). [JA-329, ¶10, -342-49, Ex. 4.]

On May 8, 2019, Martin Bergh, affiliated with JBO, confirmed the agreement in a writing between the parties as follows:

> [W]e understand that you made a request to Wil [Liebenberg] to receive 20% of the $500,000 as an introduction fee, which he agreed to once funds were received by JBO.

[JA-352]. Plaintiff responded to Bergh on the same day and noted the further restriction that JBO applied related to initial hardware or construction was not applicable. "Invoice therefore should be based on 20%. The agreement with Will is on fees not on anything related to buildup" [JA-351-52; JA-332]. Bergh then accepted the finder's fee, stating "confusion cleared up thank you" adding a smile emoji, and relayed that "Wil is very excited about the prospects for Saudi". [JA-351]. Bergh requested a revised invoice for $100,000 from Plaintiff. [JA-351]. Plaintiff sent and Defendant received the invoice. [JA-332-33.]

On June 6, 2019, Defendant's financial director Arnold Rabie sent an email to Plaintiff stating:

> I have now received an instruction from Martin Berg and the Board of Directors of Coco Safar to make a payment to you. . .

[JA-356.]

On June 20, 2019, having received funds from Advanced Tastes, Bergh sent an email to Liebenberg and Rabie confirming the agreement and the obligation of Defendant to pay the finder's fee:

> Of the $300k 20% or 60k is due to Remi as a finders fee. When JBO received the outstanding 200k a further 20% or 40K will be due and payable to Remi.

[JA-363.]

4

On June 24, 2019, Defendant's Rabie sent an email to Plaintiff stating: "I am authorized to proceed with payment." [JA-362.]

On July 3, 2019, Rabie noted that Defendant would disburse further monies, i.e., the $40,000 owed under the finder's fee agreement to Plaintiff following receipt from Advanced Tastes. [JA-361.]

Defendant entered a November 4, 2019 Memorandum of Understanding with Advanced Tastes, confirming that Defendant had received the $500,000 license fee from Advanced Tastes. [JA-366.] During the course of the action, the parties did not dispute that the final licensing fee paid Defendant by Advanced Tastes was $500,000, or any of the material terms of the agreement with Plaintiff, or that Plaintiff was owed $100,000 when the license fee was received by Defendant. [JA-1354.] Defendant never paid the promised finder's fee to Plaintiff. [JA-1354.]

A signed version of the Long-Form Agreement was initially part of anticipated evidence for Plaintiff's claims in the action, as Plaintiff recalled Defendant had sent the executed agreement back to Plaintiff. [JA-72, ¶14; JA-201, ¶5]. But the parties hotly disputed the authenticity of that Agreement. Plaintiff recalled that after it was sent to Defendant in April 2019, the Long Form Agreement had been returned to Plaintiff bearing Liebenberg's signature. [JA-

5

330.] Defendant asserted that Liebenberg never signed the Long-Form Agreement, and that his signature based on metadata on a March 10, 2020 version of the Long Form Agreement was a forgery. [JA-657, ¶23.] Plaintiff made an effort to produce the original Long-Form Agreement, but could not do so as the original document had been deleted by his third-party hosting service on or about February 4, 2020. [JA-330, ¶15] Plaintiff averred that he had neither the means, nor the computer skills to have fabricated an electronic signature. [JA-330, ¶¶16-18]. He further never gave instructions to anyone else to fabricate such a signature. [JA-330, ¶19.]

During summary judgment proceedings, both parties introduced expert testimony. Defendant pursued the theory that the Long-Form Agreement was forged with Liebenberg's signature and that no finder's fee agreement existed. Plaintiff relied on the statements of Defendant's officers confirming that an agreement existed, but insofar as it could not prove the authenticity of the Long Form Agreement at trial, did not rely on that Agreement as part of its case. [JA-330, ¶15] Indeed, the first time the Long-Form Agreement was submitted to the court was by ***Defendant's counsel***—not by Plaintiff—on September 10, 2020, months after the filing of the action. [JA-156 at 4.]

Defendant's expert Daniel L. Regard, II proffered expert testimony that Mr. Liebenberg's signature on the Long-Form Agreement was suspect, as it appeared

6

to have originated outside of the document and added electronically. [JA-660-661, ¶34.] While Mr. Regard had certain theories how that might have been accomplished, he was unable to render any conclusion how this was accomplished, and by whom. [JA-661-62, ¶¶35-36; 902-03, ¶5.] Plaintiff's expert, Dr. Daniel P. Lopresti, opined that metadata was not a reliable indicator as to when a document was created or last edited, as hardware and software applications have been known to display incorrect time/date based on their settings. [JA-786, ¶20.] Secure encoding is the solution for such timing and dating problems [JA-786, ¶21.] Dr. Lopresti opined that while it is clear that signatures were added to the signature blocks of the Long Form Agreement, there was nothing unusual about those signatures. [JA-794, ¶40.] Nor could one determine who added the signatures, or when they were added [JA-789, ¶32; 1363, p. 11.] Mr. Regard took issue with Dr. Lopresti's findings, in particular that metadata was unreliable. Mr. Regard testified that on occasions he found that Plaintiff's metadata time and dates matched one other third-party source. [JA-1303.]

## V.  <u>RELEVANT PROCEDURAL HISTORY</u>

On May 4, 2020, Plaintiff filed the initial complaint in the action. [JA-27.] Plaintiff amended the Complaint to allege adequately subject matter jurisdiction on August 6, 2020 [JA-29] and Defendant moved to dismiss on December 18, 2020. [JA-31.] On February 12, 2021, Defendant moved for sanctions under Rule 11, 28

U.S.C. § 1927 and the district court's inherent power. On July 1, 2021, the district court (Judge A. Hellerstein) denied Defendant's motion to dismiss, granted its motion to dismiss co-Defendant Orange for failure to state a claim upon which relief may be granted, and wholly denied Defendant's motion for sanctions. [JA-220-30.] On July 22, 2021, Defendant answered and issued counterclaims against Plaintiff. [JA-231-76.]

The parties conducted discovery, and thereafter both moved for summary judgment. [JA-76-626.] The district court denied Plaintiff's motion but granted summary judgment to Defendant on *sua sponte* grounds under New York's Statute of Frauds, noting that Plaintiff's evidence of an oral agreement was not sufficient to evidence a meeting of the minds between the parties. [JA-953-60.] Defendant renewed its motion for sanctions [JA-59-60], and on November 21, 2022, the matter was referred to Magistrate Judge Katherine H. Parker for pretrial purposes on Defendant's counterclaims and settlement purposes. [JA-61-62.] On May 15, 2023, a settlement was reached on all matters apart from Defendant's motion for sanctions. [JA-65.]

On June 26, 2023, Magistrate Judge Parker held a hearing at which Defendant's expert Regard was the sole witness to testify at the hearing. [JA-1266-352.] In accordance with instructions of the Court, Plaintiff submitted the

report of Plaintiff's expert, Dr. Daniel P. Lopresti, and the declarations of Kenneth Sussmane and Plaintiff Remi Laba. [JA-65-66.]

On August 2, 2023, Judge Parker recommended sanctions be imposed jointly and severally against Plaintiff and Plaintiff's counsel Kenneth Sussmane for $142,331 in attorneys fee and $49,033 in costs, and imposing nonmonetary sanctions of 5 hours of continuing legal education and electronic discovery training. [JA-1353-88.] On February 12, 2024, the district court adopted Judge Parker's imposition of sanctions. [JA-1408-11.] The Clerk of the court issued final judgment on the same day. (JA-1412-22.) The parties timely filed notices of appeal on March 13, 2024. (JA-1423-24.)

## VI. MAGISTRATE JUDGE'S PARKER'S REPORT AND RECOMMENDATION

Defendant moved for sanctions against Plaintiff on four grounds: under Rules 11 and 54(d)(2) of the Federal Rules of Civil Procedure, under 18 U.S.C. section 1927 and under the inherent power of the court, all related to the alleged fraudulent Long-Form Agreement. [JA-1356].

The Magistrate Judge recommended rejection of all but one sanction, under the court's inherent power. With respect to Fed. R. Civ. P. Rule 54(d), the court recommended that Rule 54(d) does not provide for any independent ground for the sanction of attorneys' fees. (JA- 1364.) With respect to sanctions under Fed. R. Civ. P. 11, the court recommended rejection of such sanctions because Defendant

9

failed to abide by the strict procedural requirements that counsel be provided an opportunity after notice to cure any defect in the filing.  [JA-165-66.]  Moreover, Defendant filed for sanctions based on a defunct pleading, and before Plaintiff's withdrawal of any reliance upon the Long-Form Agreement, relying on this Court's decision in *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). (JA-1366.)  With respect to sanctions under 28 U.S.C. section 1927, the court recommended that such sanctions were appropriate only when imposed on counsel, relying on this Court's decision in *Oliveri v. Thompson*, 803 F. 2d 1265, 1273 (2d Cir. 1986).  Moreover, the court recognized that under New York law, oral finder's fee arrangements were nonetheless enforceable under *Esther Creative Group, LLC v. Gabel*, 901 N.Y.S.2d 906 (N.Y. Sup. Ct. 2009).

While recognizing the legal mandate that a court must impose sanctions only with "restraint and discretion," [JA-1370], the court abandoned any such restraint in its exercise.   With respect to sanctions under the court's inherent power, the court selected Defendant's expert's conclusions and ignored Plaintiff's expert report.  [JA-1371-75.)  The court recommended sanctions be imposed against both Plaintiff and Plaintiff's counsel.  As for Plaintiff, the court found that Plaintiff's denials as to altering documents were not credible as he had a motive to affix Liebenberg's signature to the Agreement to bolster his claim for a finder's fee. [JA-1372.]  The court assumed that his protestation of computer ignorance was

false because "no advanced computer sophistication is needed to create a false

signature block…" [JA-1371.]  The court also rejected Plaintiff's inability to

produce materials from a third party server—again without evidence—because

such deletion would not affect local copies.  [JA-1372.]

The court imputed similar motives to Plaintiff's counsel, explicitly finding

that counsel acted in bad faith "because the fabricated Liebenberg signature was

obvious at least by December 15, 2021 when JBO filed its discovery sanctions

motion." [JA-1376.]  The court viewed Plaintiff's counsel's production of multiple

pdfs in discovery as a "highly suspect" way of producing a document, and

"indicative of a motive to hide metadata" for which counsel "had no satisfactory

explanation."  [JA-1372.]  Despite Defendant's inability to prove who was

involved in the alleged forgery or how the forgery was accomplished, the court

evidenced metaphysical certainty.  "There is no doubt that Laba and his counsel

acted in bad faith when arguing that the fraudulent contract simply could not be

authenticated when they knew or should have known that Liebenberg's signature

was fabricated and there was no bona fide written Agreement between JBO and

Laba." [JA-1377.]  No where in this analysis does the court consider Plaintiff's

expert evidence that there was "nothing that stands out as unusual" [JA-794, ¶40]

about the signature blocks in the executed Long-Form Agreement, and no reason

provided about why they would appear to be unusual to either Plaintiff or

Plaintiff's counsel. Nor did the court consider any of a number of possibilities why the Long Form Agreement could not be authenticated, such as if Defendant's employees or agents affixed Liebenberg's signature, or if Plaintiff's employees had done so without Plaintiff's knowledge.

The court in its imposition of sanctions also made little mention, and no analysis of Plaintiff's theory of the case, that its claims were viable even in the absence of an executed Long-Form Agreement. The court in fact noted in its report and recommendation that indeed Plaintiff and Defendant had "an 'informal agreement' regarding a Saudi Arabia store," supported by emails Defendant itself made part of the record. [JA-1356-57.]

## VII.  THE DISTRICT COURT'S OPINION

The district court summarized the recommendations of Judge Parker, noting that the main issue in the case was the absence of a signed agreement evidencing that Defendant owed any finder's fee to Plaintiff. [JA-1408-09.] Without analysis, the district court simply accepted that Plaintiff's counsel was the "knowing agent" of the fraud of his client. [JA-1410.] The district court—again without meaningful analysis—simply approved the remedy of attorneys' fees jointly and severally against attorney and client and nonmonetary sanctions of continuing legal education and electronic discovery training for Plaintiff's counsel.

## VIII. <u>SUMMARY OF THE ARGUMENT</u>

Plaintiff's breach of contract claim was brought in a good faith effort to recoup the benefit of the bargain entered between Plaintiff and Defendant. Plaintiff's claim was well-founded. In good faith, Plaintiff brought a lucrative commercial opportunity to Defendant, which Defendant enthusiastically accepted, pursued and benefited thereby. Ultimately, with the district court's dismissal of Plaintiff's claim, Defendant achieved a windfall, securing the benefit of the bargain without having to pay for it, and have its attorneys' fees and costs paid to boot. Defendant has little to complain about.

A number of factors—none justified by the record—led to the unfortunate decision of Judge Parker to impose sanctions on Plaintiff and Plaintiff's counsel, which sanctions the district court wholly adopted. First, the court (i.e., Magistrate Judge Parker and Judge Hellerstein) ignored the legal requirements and further lowered the bar for a finding of bad faith, retroactively imputing to Plaintiff and Plaintiff's counsel knowledge of the inauthenticity of the Long-Form Agreement, when such inauthenticity was anything but clear. Secondly, the court repeatedly injected impermissible hindsight and its own knowledge of the application of computer signatures to the matter, to dismiss Plaintiff's declaration. Then, to compound this injury, the court imputed knowledge of inauthenticity to Plaintiff's counsel, as if no expert testimony existed that the signature blocks in the question

Long-Form agreement were "nothing unusual." The court erred in finding bad faith

in what was an attempt by Plaintiff and Plaintiff's counsel to narrow the issues

before the court, as part of its obligation under Rule 1 of the Federal Rules of Civil

Procedure to "secure the just, speedy and inexpensive determination of every

action and proceeding." Finally, the court imposed joint and several liability for

attorneys' fees on counsel for Plaintiff without specific notice that counsel would

be subjected to sanctions, violating both due process and opportunity to be heard.

## IX.   <u>STANDARD OF REVIEW</u>

In general, this Court subjects an award of sanctions to review under the

abuse of discretion standard. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,

405, 110 S.Ct. 2447, 2461 (1990). However, because a district court [imposing

sanctions] is "accuser, fact finder and sentencing judge all in one, [such a review]

is more exacting…" *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110,

113-14 (2d Cir. 2009). A high degree of specificity in the factual findings of lower

courts upon which sanctions for bad faith are based is expected. *Virginia Props. v.

T-Mobile Ne., LLC*, 865 F.3d 110, 113 (2d Cir. 2017). A district court awarding

sanction must make such a decision only with "restraint and discretion." *Schlaifer

Nance & Co. v. Estate of Andy Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). Further,

the reviewing court will "find such an abuse where the court's decision was the

product of an erroneous view of the law . . . or a clearly erroneous assessment of

the evidence." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).

## ARGUMENT

## X. THE DISTRICT COURT FAILED TO APPLY THE CORRECT STANDARD BEFORE IMPOSING SANCTIONS UNDER ITS INHERENT POWER.

### A. Judge Parker Failed to Find that Plaintiff's and Plaintiff's Attorney did not Present a Claim under Color of Law.

Judge Parker imposed sanctions on Plaintiff and Plaintiff's counsel under the court's inherent power. This power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2121, 2132 (1991). A court imposing sanctions under its inherent power must make two findings, first, that "the challenged claim was without a colorable basis" and, second that "the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Schlaifer*, 194 F.3d at 336. A claim is "entirely without color" when it lacks any legal or factual basis. *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980).

Here, not only did Judge Parker fail to make the requisite finding that Plaintiff's claim was without a colorable basis, Judge Parker found to the contrary that in fact Plaintiff's claim in fact had ***colorable basis***. "Because New York law allows a finder's fee agreement to be memorialized in writing that takes the form of

15

emails, Laba's claims [concerning the existence of an enforceable oral agreement] were not entirely without color." [JA-1369.] Judge Parker further found that the oral agreement—not the Long-Form Agreement—was the "gravamen" of Plaintiff's claim. [JA-1368.] Curiously, Judge Parker noted the court's obligation to make a finding that the offending party's claims were entirely without color before imposing sanctions, but appears to have ignored it thereafter. [JA-1369.]

As Judge Parker failed to make the first requisite requirement for imposition of sanctions under the court's inherent power, reversal is therefore warranted. *See Int'l Techs. Marketing, Inc. v. Verint Sys. Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021)("For decades, we have consistently made clear that the only prerequisites to a district court imposing monetary sanctions under its inherent power is that a party advanced a colorless claim and did so for improper reasons."). Failing to reverse would chill and deter others in similar situations from pursuing colorable claims. *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d. Cir. 1986).

**B. Holding an Evidentiary Hearing on a Document Does not Excuse the Court from Making Requisite Findings.**

It is possible that Judge Parker believed that holding an evidentiary hearing allows a sanctions court to avoid the need to find that the party and or its attorneys advanced a claim having no legal merit. Judge Parker ruled that: "The court 'has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.' *Chambers*, 501 U.S. at 44; *See Rossbach*, 2021 WL

16

3421569, at *8. That power includes the power to take testimony and reach factual conclusions. See *Liebowitz*, 2021 WL 3118938, at *9 (affirming a district court's sanctions order that was based on the district court's independent "review[ ] of the record and evaluat[ion of] the demeanor of the witnesses at [an] evidentiary hearing"). [JA-1370.]  But none of the cases Judge Parker relied upon allow the sanctions court to circumvent the prerequisite findings this Court has mandated "for decades."  *Verint*, 991 F.3d at 369.

This Court for example in deciding *Liebowitz v. Bandshell Artist Mngt.*, 6 F.4th 267, 284-85 (2d Cir. 2021) affirmed the sanctions imposed as the sanctioned attorney knew the copyright at issue had not been registered and thus the case was being pursued without color of law and in bad faith.[2]  Further, in *Chambers*, which Judge Parker also references, the Supreme Court acknowledged that the fraud the courts are empowered to investigate specifically relates to proving bad faith of the litigants. *See Chambers*, 501 U.S. at 44-46.  Similarly, in *Rossbach*, 81 F.4th 124, 135 & 142 (2d Cir. 2023), the district court found that the sexual harassment plaintiff fabricated the primary piece of documentary evidence supporting her allegation.  Plaintiff's bad faith filing, and litigation misconduct, were key to this Court's affirmance of the sanctions against her.  *Id*.  This Court vacated and remanded for the absence of such

---

[2] No civil action for copyright infringement shall be instituted until registration of the copyright claim has been made.  17 U.S.C. section 411(a).

findings relating to the sanctioned attorney who negligently or recklessly insisted on defending the complaint founded on obviously fabricated evidence. *See id*. at 144. Finally, in *Yukos Capital*, 977 F.3d at 235, this Court noted that sanctions for fraud are warranted if a party "sentiently set in motion an unconscionable scheme to interfere with the judicial system's ability to impartially adjudicate the action." No such fraud was demonstrated, nor sanctions awarded in *Yukos*. Thus, this Court never had to reach the question whether its legal requirements for the imposition of sanctions should be reconsidered. *Id*. In any event, neither Judge Parker nor the district court made any findings of any such knowing and unconscionable scheme. To the contrary, by removing reliance upon a document that could not be authenticated, Plaintiff and his counsel here narrowed—not interfered—with the court's ability to adjudicate the action.

### C. Judge Parker's Reliance on Other District Court Sanctions Rulings is Misplaced.

Judge Parker relied on three district court level cases in an effort to support her erroneous application of sanctions against Plaintiff and Plaintiff's counsel: *Lawrence v. City of New York*, 15cv8947, 2018 WL 3611963 (S.D.N.Y. July 27, 2018); *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573 (S.D.N.Y. 1996); and *Rybner v. Cannon Design, Inc.*, 95-civ-0279 (SS), 1996 WL 470668 (S.D.N.Y. Aug. 20, 1996). None are apposite. In *Lawrence*, the plaintiff was accused of lying about when a large number of photographs were taken and of giving false testimony at her

deposition. 2018 WL 3611963, at *1. She essentially admitted as much, noting to the court after counsel's withdrawal that mental illness prevented her from giving truthful testimony. *Id.* at *2. Sanctions were awarded including dismissal of the action and the award of attorney's fees. *Id*. at *8. Similarly, in *Rybner*, the plaintiff admitted he lied under oath in his deposition, and the court imposed discovery sanctions, including for his admitted perjury. 1996 WL 470668, at *2. In both *Lawrence* and *Rybner*, bad faith was manifest, and abuse of the legal process clear. Here, in contrast, case-wide sanctions were imposed in the absence of any proven bad faith when a number of possibilities could have accounted for the suspected inauthenticity of the Long-Form Agreement. Similarly, in *Cerutti*, testimony established "ample basis" for concluding that defendant fabricated multiple records and engaged in a pattern of verifiable falsehoods. *Cerutti*, 169 F.R.D. at 582. The court referred to the circumstances as "extreme because we are dealing with repeated rather than isolated abuses." *Id*. at 583. Here, in contrast, the Court is dealing with an isolated issue of the proffer of a suspect Long-Form Agreement, which Plaintiff and counsel abandoned early in the case because the Agreement could not be authenticated. [JA-1157, ¶20.]

In its terse review of Judge Parker's award of sanctions, the district court did not revisit this Court's jurisprudence and took little notice of Judge Parker's clear error of law. (JA-1408-09.) This Court should therefore reverse the decision of

Judge Parker and the affirmance of the district court. *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986)(reversing sanctions under inherent power against attorney who pursued colorable claims unsuccessfully); *Schlaifer*, 194 F.3d at 338 (reversing imposition of sanctions where appellants could reasonably believe they could have established their fraud claim).

## XI.  JUDGE PARKER ERRED BY APPLYING IMPERMISSIBLE HINDSIGHT TO RULE PLAINTIFF AND HIS COUNSEL FILED THE BREACH CLAIM IN BAD FAITH.

### A. Bad Faith is a Rare Event in Litigation.

Judge Parker also erred in her review of the evidence, leading her to the unsupported conclusion that Plaintiff and Plaintiff's counsel acted in bad faith. A finding of bad faith must be fully and specifically supported in the record. *Virginia Props.*, 865 F.3d at 113. Although Judge Parker found bad faith here, the decision is insufficiently supported and one that "cannot be located within the range of permissible decisions" *Id*.

A finding that a litigant began an action, or continued an action, in bad faith is an exceptionally rare occurrence. *Chambers*, 501 U.S. at 44; *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir. 1996)(admonishing courts that sanctions must be imposed with caution). Bad faith can only be found where the losing party's claims were "entirely without color and [made] wantonly, for purposes of harassment or delay or for other improper purposes." *Browning Debenture*

*Holders Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977). Further, and particularly relevant here though in the Rule 11 context, district courts are admonished to "avoid hindsight and resolve all doubts in favor of the signer." *Oliveri*, 803 F.2d at 1275. With respect to attorneys, bad faith must be distinguished from those "excesses in conduct of the sort that is normally part of the attorney's legitimate efforts at zealous advocacy for the client." *United States v. Seltzer*, 227 F.3d 36, 40 (2d Cir. 2000).

## B. Judge Parker Allowed Hindsight to Infect the Sanctions Issue.

Instead of applying the proper standard, Judge Parker applied hindsight in the wake of the district court's decision to grant summary judgment to Defendant. This hindsight is apparent throughout the ruling, frequently appearing in the form of skewed and unreasonable inferences from the evidence. For example, Judge Parker's report and recommendation parrots the findings of Defendant's 29-page expert report and two supplemental declarations authored by Defendant's expert Mr. Regard. [JA-649-782; 901-05; 929-40]. Mr. Regard provided copious analysis of the authenticity of the Long-Form Agreement, despite the fact that Plaintiff long ago dropped any reliance on that document. [JA-1157, ¶20.] Regard billed that expertise at $950 an hour for what amounted to $40,000. [JA-1316.] And Regard still could not demonstrate anything about the Long Form Agreement other than what Plaintiff and Plaintiff's counsel realized while litigating the matter after filing—that the

21

Long-Form Agreement could not be authenticated. [JA-330, ¶15.] Judge Parker makes little reference to Plaintiff's expert Dr. Lopresti's opinions, or how they may have affected Plaintiff's or Plaintiff's view of the case. Instead, Judge Parker dismissed these opinions as unpersuasive. [JA-1375.]

In further alleged support of the finding of bad faith, Judge Parker asserted that the executed Long-Form Agreement contained misspellings and blanks. [JA-1372.] The court was persuaded that it would be "highly suspect" that the Defendant's CEO would have signed an agreement without correcting the spelling of the company's name. [JA-1372.] Judge Parker made no reference to the habits of Defendant's CEO, how busy he is on a day-to-day basis, and nowhere relied on the CEO's testimony as to whether he has ever corrected a signature block in the past. [JA-153-88.]

On a sanctions motion, doubts should be resolved in favor and not against the party or attorney to be sanctioned. *Oliveri*, 803 F.2d at 1275. But the reverse was true with respect to Judge Parker's ruling. No party disputed that Liebenberg's signature in fact appeared on the document. [JA-1306, at ll. 19-21.] Plaintiff's expert had asserted that Plaintiff countersigned the Long-Form Agreement and scanned the document into his computer. There was no dispute concerning the process either [JA-13-6, at ll. 22-25.] What happened following that process was at issue, for which a number of equal possibilities suggested themselves. One is that

22

the Judge Parker was correct and the Plaintiff attached Liebenberg's name. Another is that others at Defendant or at Orange, its parent, attached that signature without the knowledge of Plaintiff or Plaintiff's counsel. Another is that an employee or agent of Plaintiff attached the signature and did not inform Plaintiff or Plaintiff's counsel. Rather than assess these probabilities, Judge Parker simply assumed that Plaintiff was directly responsible. [JA-1371; -1372 & -1376.] Judge Parker's too-easy finding of bad faith is inconsistent with the court's role in applying sanctions under its inherent power. *Schlaifer*, 194 F.3d at 333 (sanctions should only be award with "restraint and discretion").

In its determination that the party and counsel acted in bad faith, the court must be aware of and avoid hindsight from infecting the imposition of sanctions on the losing party. "The Court must not allow hindsight to skew its judgment. The converse, however, holds true as well. Pleadings, motions, and other papers must be justifiable at the time they are signed…" *See United States v. Int'l Brotherhood of Teamsters, et al.*, 948 F.2d 1338 (2d Cir. 1991)(in Rule 11 context). "[T]he District Court's view in granting judgment as a matter of law, as well as our affirmance thereof, are the result of detached judicial analysis that, made with the benefit of hindsight after all the evidence has been presented at trial, cannot be equated with the advocates's considerations prior to and during the trial." *Schlaifer*, 194 F.3d at 338 (warning against hindsight in imposition of sanctions under the

court's inherent power).

In addition to relying on hindsight, Judge Parker compounded the error by relying on her own expertise, which was never made part of the record and to which Plaintiff's counsel could not—and therefore did not—respond in argument. [JA-1339-52.] When addressing Plaintiff's declaration that he was unfamiliar with the Adobe software needed to add a signature to a document electronically, Judge Parker dismissed the testimony. "The Court is also extremely familiar with application of electronic signatures and signature blocks and knows from its own experience that no advanced computer sophistication is needed to create a fake signature block and apply it to a document." [JA-1371.] Had Judge Parker directed Plaintiff's counsel attention to the section of Plaintiff's declaration, counsel could have addressed the issue on argument. In any other proceeding, such off-the-record reliance might constitute harmless error. In sanctions proceedings, however, such an impropriety may well have a serious impact. For example, in *Seltzer*, this Court vacated sanctions and ruled that the sanctioned party did not have a proper opportunity to respond.

> It appears from the record that the district court based its decision to sanction Seltzer, in part, on unidentified information communicated by the clerk to the judge about his conversation with Seltzer. As Seltzer was not told what the clerk had said, she had no opportunity to dispute, rebut or explain it.

227 F.3d at 42.  This Court therefore vacated the award for further development of the record.  *Id*. at 43.  This Court should do no less here.

For its part, the district court made little effort to correct Judge Parker's error, reaching the conclusion based on Judge Parker's report and recommendation that Plaintiff had engaged in forgery, and Plaintiff's counsel stubbornly refused to accept that.  [JA-1411.]

### C. The Record Supports that Plaintiff's Action Started and was Maintained in Good Faith.

Judge Parker's finding of bad faith on the part of Plaintiff and Plaintiff's counsel is also not supported by the record as required.  *Virginia Props.*, 865 F.3d at 113. Early in the case, in 2020, Defendant's counsel raised with Plaintiff's counsel, Kenneth Sussmane ("Sussmane") that Defendant's position was that the Long-Form Agreement had not been executed.   Mr. Sussmane undertook a thorough investigation of the assertion.  Sussmane's findings are set forth in his declaration submitted in lieu of testimony for Judge Parker's sanctions hearing (JA-1156-60, ¶¶ 11-39.)  Sussmane interviewed co-Defendant Orange's former officer Bergh, who provided a declaration to Sussmane in May 2020.  [JA-135-36.]  Bergh confirmed, based on admissions from Orange's Chief Executive Officer Liebenberg that indeed a finder's fee contract had been entered between Plaintiff and Defendant in the amount of 20% for the $500,000 Defendant was to receive from Advanced Tastes. [JA-135, ¶3.]  Ultimately, Advanced Tastes paid Defendant $800,000 for the license

agreement. [JA-136, ¶9.] According to Bergh, "At no time did Mr. Liebenberg claim that there was no agreement with [Plaintiff] Mr. Laba. At no time did Mr. Liebenberg claim that Mr. Laba was not entitled to compensation for his services." [JA-136, ¶7-8.]

After Bergh submitted his declaration, Sussmane obtained the resignation letter of Wayne Bebb, dated June 9, 2020, from his position as Chief Operating Officer and Chief Financial Officer of Defendant. [JA-130-32, ¶¶11-21.] Bebb echoed the admissions from Liebenberg that Bergh referred to concerning the finder's fee agreement. Specifically, Bebb noted: "Liebenberg…admitted to me and on recording that a deal was in place with Remi [Plaintiff] for which they have received $800k in cash payments and he should have been paid. However, in the normal business conduct, whenever an amount has to be repaid or settled, an intricate web is constructed by Liebenberg to find a way to avoid the liability and shift the onus of blame on to the other person." [JA-145.] Bebb further noted: "Liebenberg has told me clearly a deal was prepared and agreed between them [Plaintiff and Defendant], and Remi's claim for monies owing is valid and binding on the company." [JA-145.]

Plaintiff and Plaintiff's counsel were thus confronted with what appeared based on the circumstances to be stonewalling conduct by a party who wanted to the benefit of the bargain struck without paying for it. In an attempt to narrow the issues for the

26

Court—as early as September 2020—Plaintiff advised Defendant and the Court that:

"Regardless of whether Plaintiff is able to prove delivery of the written contract, Plaintiff states claims for breach of an oral contract as well as quantum meruit and unjust enrichment." [JA-1157, ¶20.]   Eventually, documents were produced from Defendant in discovery underscoring the validity of Plaintiff's reliance on the oral agreement, including:

- Bergh's contemporaneous confirmation in writing on May 8, 2019 that a finder's fee agreement existed [JA-352];

- Plaintiff's reply on the same day that the finder's fee had nothing to do with hardware or buildup on site; [JA-351];

- Bergh's acceptance of the finder's fee having "confusion cleared up thank you" and a smile emoji [JA-351);

- Bergh's request from Plaintiff for a revised invoice of $100,000 to reflect the 20% owed; [JA-351]; and

- Plaintiff's issuance, and Defendant's receipt, of the revised invoice [JA-359-60].

Further confirmation of the oral agreement from Defendant came in the form of later emails to Plaintiff. [JA-356]( Defendant's CFO: "I have now received an instruction from Martin Berg and the Board of Directors of Coco Safar to make a payment to you.")(Bergh email: "Of the $300k 20% or 60k is due to Remi as a finder's fee. When JBO received the outstanding 200k a further 20% or 40K will be due and payable to Remi.") [JA-363.]

Thus, despite any issues with the Long Form Agreement that Defendant raised at the outset, Plaintiff had in its possession good faith, colorable evidence to support a breach of the oral finder's fee agreement. The contemporaneous evidence demonstrated that an oral agreement had been entered under New York law and was capable of being timely and fully performed—and in fact with the payments Defendant received from Advanced Taste—had been performed. *Matter of Express Indus. & Term. Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589, 693 N.Y.S.2d 857 (1999)(requiring sufficient definite manifestation of mutual assent); *Majestic Farms Supply Ltd. v. Service Riding Apparel, Ltd.*, 137 A.D.2d 501, 524 N.Y.S.2d 245 (App. Div. 2d Dep't 1988)(licensing agreement required no writing for enforceability if it could be performed within a year so long as not terminable at will). Judge Parker ignored Plaintiff's counsel's investigation, making no comment in her opinion one way or another on the investigation apart from noting the existence and content of the Bergh Declaration and the Bebb letter. [JA-1355-56.] And the delay in the 22 months in between was occasioned not by Plaintiff interposing legal positions but in fact by Defendant's delay in taking the deposition of Plaintiff. [JA-1158, at ¶21.]

That Defendant, and not Plaintiff, ultimately prevailed on the enforceability of the oral agreement is beside the point. Otherwise, the American rule that parties in general pay their own attorneys' fees would be abrogated. Judge Parker

acknowledged as much in rejecting Defendant's sanctions claims under Rule 54(d) of the Federal Rule of Civil Procedure. [JA-1363-64.] Plaintiff and Sussmane as counsel for Plaintiff presented in good faith at the time a viable legal theory on which judgment could have been rendered. Losing on a theory does not mean that the theory was baseless at the outset. *Chambers*, 501 U.S. at 50 ("[T]he imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation."); *Milltex Indus. Corp. v. Jacquard Lace Co.*, Ltd., 55 F.3d 34, 39 (2d Cir. 1995)("without a finding that Vann deliberately misled the court at the time his client sought an early adjournment, we cannot conclude that Vann acted in bad faith").

## XII. JUDGE PARKER FAILED TO HOLD DEFENDANT TO ITS BURDEN OF CLEAR AND CONVINCING EVIDENCE.

"[C]lear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power." *Yukos,* 977 F.3d at 235. Nor could the court's finding of bad faith have surpassed the required threshold of clear and convincing evidence. "Clear and convincing evidence . . . means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.' *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). To have satisfied this exacting standard, the fact finder must have "an abiding conviction that the truth of [the] factual contentions are highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 2438 (1984).

29

No direct evidence was presented to demonstrate a high (or even a preponderant) probability that Plaintiff fabricated the Long-Form Agreement or knew that it had been fabricated. Plaintiff directly denied doing that or instructing anyone to do so. [JA-330, ¶¶16-20.] Plaintiff's counsel directly denied seeing any evidence consistent with such a claim [JA-1156, ¶10 & 1159, ¶36.] Plaintiff's expert Dr. Lopresti opined that there was nothing unusual in the signature blocks of the Long-Form Agreement. [JA-794, ¶40.] Defendant's expert although finding that the executed Long-Form was not authentic, was unable to render any conclusion how this was accomplished, and by whom. [JA-661-62, ¶¶35-36; 902-03, ¶5.] Judge Parker's finding therefore that Plaintiff and Plaintiff's counsel knew that the Long-Form had been fabricated based on Plaintiff's "motivation" amounts to nothing more than impermissible speculation. The finding must be vacated. *See Sussman[3] v. Bank of Israel*, 56 F.3d 450, 455 & 460 (2d Cir. 1995)(reversing sanctions against attorney based on suspected improper motive in threatening pre-litigation letter where defendants failed to show that plaintiff's claims lacked color of law.)

---

[3] Despite the apparent similarity in name, the Sussman plaintiff in the *Bank of Israel* case is not an attorney and not the same person who was Plaintiff's counsel in this matter, Kenneth Sussman**e**.

## XIII. JUDGE PARKER CONFLATED THE STANDARD OF BAD FAITH WITH THAT OF NEGLIGENCE.

Judge Parker reached the erroneous conclusion that Plaintiff himself was responsible for submitting what Judge Parker believed to be a "fabrication" to the Court.  Judge Parker did not limit her findings to Plaintiff, and jointly and severally imposed the sanctions of attorneys' fees on Plaintiff's counsel Sussmane.  Judge Parker made the following findings of fact:

- The Agreement presented by Laba and his counsel as a final, signed agreement appears to be a draft as there are business name misspellings and blanks [JA-1372];

- The fabricated Liebenberg signature was obvious at least by December 15, 2021 [JA-1376];

- Plaintiff and his counsel refused to correct the record.  [JA-1376].

- Counsel [failed] to be vigilant in scrutinizing their client's claims [JA-1377.]

- Plaintiff and counsel "knew or should have known that Liebenberg's signature was fabricated."  [JA-1377.]

Judge Parker's findings are as noted made with what amounted to impermissible hindsight.  But the findings above in particular are also evidence that Judge Parker imported a negligence standard in lieu of required standard of bad faith, thus rendering the imposition of unrestrained case-wide sanctions more likely.  Negligence is not akin to bad faith and is not appropriately applied where the case-wide sanction of attorneys' fees is implicated.  *Schlaifer*, 194 F.3d at 336.

As noted, a party's bad faith is shown by intentional conduct where the party takes a position, entirely unsupported by law, and interposes that position in an action for improper purpose. *Browning Debenture*, 560 F.2d at 1088. Negligence in contrast is merely the failure to exercise due care. *See Residential Funding Corp., v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d. Cir. 2002.)(discussing differences between bad faith and negligence with respect to sanctions for intentional versus negligent destruction of documents). Judge Parker's adoption of the "known or should have known standard" in the excerpted findings above is akin to applying a duty to avoid simple negligence. The adoption of this standard further lowered the evidentiary bar and allowed Judge Parker to impose sanctions against Plaintiff and Plaintiff's counsel. This Court faced a similar situation in *Rossbach*, 81 F.4th 124, where the district court erroneously applied a lower standard negligence or recklessness against an attorney in the absence of supported findings of bad faith. "The cited misconduct pertained to the investigation and prosecution of Rossbach's claims, the monitoring of Rossbach's discovery obligations and testimony [which were] integrally related to [counsel's] role as an advocate for his … client." *Id*. at 143. Application of the lower standard resulted in this Court's vacating and remanding for application of the correct standard of bad faith. *Id*. at 144. For the same reasons, the award here must be vacated. *Cooter*, 496 U.S. at 405, 110 S.Ct. at 2461 (noting district court would necessarily abuse its discretion if it based its ruling

on erroneous view of the law or on clearly erroneous assessment of the evidence).

*See, e.g., Scivantage*, 564 F.3d at 115 (reversing sanctions against law firm where firm entitled by Fed. R. Civ. P. 41 to dismiss the case).

## XIV. JUDGE PARKER INAPPROPRIATELY GRANTED RELIEF AGAINST COUNSEL THAT WAS NEVER SOUGHT.

Judge Parker's imposition of sanctions jointly and severally against Sussmane as counsel was inappropriate for other reasons as well. Defendant in its Notice of Motion moved "for an Order for JBO Worldwide Supply (Pty.) Ltd. to recover its reasonable attorneys' fee from Plaintiff Remi Laba." [JA-961-62.] A movant is only entitled to the relief requested in its notice of motion. Fed. R. Civ. P. 7(b)(1)(B)-(C)(requiring that motion must state the relief sought and the grounds for relief); S.D.N.Y. Local Rule 7.1(1)(notice of relief shall specify the relief sought by the motion).

In *Berns v. EMI Music Publ'g, Inc.*, 95 Civ. 8130 (KTD), 1999 WL 1029711, at *10 (S.D.N.Y. Nov. 10, 1999), the motions court denied a request for sanctions made in an affidavit, stating "rules of pleadings dictate that relief requested apply not only to complaints, but also to motions. If the relief is not requested by the notice of motion, then the movant does not get that relief." Similarly, in *Benjamin v. Fosdick Mach. Tool Co.*, No-11-CV-00571, 2013 WL 3784139, at *2, n. 2 (W.D.N.Y. July 18, 2013), the court rejected a request to dismiss cross-claims made

in a Memorandum of Law, stating that since the notice of motion did not seek such relief it "did not get that relief."

Notice is a key element of due process, particularly with respect to motion for attorneys' fees as sanctions. "It is well-established that "[d]ue process requires that courts provide notice and an opportunity to be heard before imposing *any* kind of sanctions." *Mackler v. Cohen*, 225 F.3d 136 (2d. Cir. 2000), quoting *Ted Lapidus, S.A., v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) and adding emphasis. Indeed, "depending on the circumstances, a party facing sanctions may be entitled to enhanced procedural protections" associated with criminal procedure, "beyond notice and an opportunity to be heard." *Scivantage*, 564 F.3d at 116-17. In *Mackler Prods.,* this Court reversed certain sanctions imposed on an attorney because the district court had failed to give the attorney adequate notice of the specific conduct for which he would face sanctions. 225 F.3d at 145. The district court ignored this jurisprudence when it ruled without citing any support that "[n]otice of sanctions to be sought against Laba for a fraud carried out by his lawyer was notice also to Sussmane, the lawyer." [JA-1411.] Not so. Particularized notice is required. The purpose of particularized notice is to put counsel "on notice as to the particular factors that he must address if he is to avoid sanctions." *Vann*, 112 F.3d at 96 (vacating award of *sua sponte* sanction against attorney under 28 U.S.C. section

1927).  An attorney must be "given a chance to defend himself against specific charges." *Id*. at 97.  Such particularized notice was absent here.

When arguing the motion for sanctions before Judge Parker, Sussmane had little reason to believe he would be made jointly and severally liable in the court's report and recommendation.  As a result, Sussmane did not hire separate counsel to defend him at the hearing [JA-1266](providing appearances of counsel) and did not address issues of potential sanctions against him personally, except following argument by opposing counsel [JA-1317-39].  Sussmane principally limited his argument to the same due diligence issues he presented on behalf of Plaintiff in responses to previous sanctions motions, and why Rule 11 was inapplicable on safe harbor grounds.  [JA-1344-50.]  Had he been put on notice that joint and several sanctions were conceivable, he certainly would have addressed issues beyond that of his client, or had separate counsel address them.

## XV.  CONCLUSION

This Court should reverse and vacate the district court opinion adopting the report and recommendation of Judge Parker (JA-1353-88) insofar as it awarded sanctions jointly and severally against Remi Laba and Kenneth Sussmane, and provide any other relief consistent with the interests of justice.

Dated:     July 10, 2024

/s/ Kenneth Sussmane
Kenneth Sussmane
MCCUE SUSSMANE ZAPFEL & COHEN
P.C.
420 Lexington Avenue, Room 2250
New York, NY 10170
(212) 931-5500

*Attorneys for Plaintiff*

_____
Kevin Murphy
WUERSCH & GERING LLP
100 Wall Street
New York, NY 10005
(212) 631-5050

*Attorneys for Plaintiff and Kenneth Sussmane*

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)**

I certify pursuant to Fed. R. App. P. 32(a)(7)(C) that the attached brief is proportionally spaced, has a typeface of Times New Roman of 14 points and contains 8097 words excluding as permitted under Fed. R. App. P. 32(a)(7)(B) the table of contents, table of authorities, and certificate of compliance as counted by the Microsoft Word processing system used to produce this brief.

# SPECIAL APPENDIX

i

# Table of Contents

**Page**

Order of Honorable Alvin K. Hellerstein Adopting
  Report and Recommendation, Dated February 12, 2024 ..........SPA-1

Judgment of The United States District Court Southern District
  of New York, Dated February 12, 2024, with Attachments .....SPA-5

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
REMI LABA,                                                  :
                                                           :
                                        Plaintiff,         :     **ORDER ADOPTING REPORT**
                                                           :     **AND RECOMMENDATION**
                        -against-                          :
                                                           :     20 Civ. 3443 (AKH)
JBO WORLDWIDE SUPPLY PTY LTD,                              :
                                                           :
                        Defendant/Third-Party Plaintiff/   :
                                Fourth-Party Defendant.    :
                                                           :
                                                           :
                        -against-                          :
                                                           :
REMI LABA, MARTIN BERGH, WAYNE                             :
BEBB, IAIN BANNER, ROOIBOIS LIMITED,                      :
NATURALLY OUT OF AFRICA PERFECTLY                          :
NATURAL PTY LTD, NOOA CALIFORNIA,                         :
LLC, GEORGES KERN, and BRAND ESSENCE                      :
HOSPITALITY GROUP LLC d/b/a                                :
BAGATELLE,                                                 :
                                                           :
        Third-Party Defendants/Fourth-Party Plaintiffs.   :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Remi Laba filed this suit May 3, 2020, seeking to recover a finder's fee of

$180,000.  Defendant JBO Worldwide Supply Pty Ltd denied the allegations of the complaint

and counterclaimed and filed a third-party complaint, alleging that the lawsuit was a tactic to

embroil it in court proceedings and despoil it of its business.  After more than three years of

fractious litigation, 374 entries on the court's docket and a summary judgment dismissing the

complaint, the parties, with the help of Magistrate Judge Katherine H. Parker, settled all issues

but one, whether plaintiff should be sanctioned for improper litigation conduct.

        The main issue of this case was the existence, or absence, of a written, signed

finder's fee agreement sufficient to satisfy New York's Statute of Frauds.  N.Y. Gen. Oblig. L. §

1

SPA-2

5-701.  Laba's complaint alleged an agreement without specifying if it was written or oral, and insisted that JBO's President had signed such an agreement.  JBO denied that a signed agreement existed and produced a copy of an agreement, claiming that it was a fraudulent agreement, showing both Laba's signature and a signature of JBO's President that JBO asserted had been forged.  Additional proceedings ensued, and Laba added a modified argument that email exchanges, not JBO's signature, made the agreement, so it didn't matter if JBO's signature was forged or authentic.  Dual motions for summary judgment were filed and briefed, and I held for the defendant, that there was no evidence of an agreement that satisfied the Statute of Frauds.

At that point, the parties began talks of settlement.  I delegated the case, and all proceedings relevant to the counterclaim and third part complaint, to Magistrate Judge Katherine H. Parker.  Under her expert mediation, all issues, except the issue of sanctions, were settled.  After careful consideration of the evidence and arguments tendered by each side, Judge Parker recommended that defendant's motion for sanctions be granted, but based on the court's inherent power and not because of Rules 11 and 54 (d) or 18 U.S.C. § 1927.  Judge Parker found that JBO's legal expenses had been incurred because plaintiff had falsely alleged a written, signed contract as the basis of its claim, and recommended that JBO's legal expenses in defense of plaintiff's claim, in the amount of $ 142,331, plus $49,033 costs, totaling $191,364, be awarded.  Judge Parker found that these amounts were fair and reasonable, and that defendant had paid or incurred them because of plaintiff's conduct.  Judge Parker recommended that they be assessed against both Laba and Laba's attorneys, jointly and severally.  Judge Parker denied JBO's motion for sanctions related to its counterclaim and third-party complaint.  Finally, Judge Parker recommended that Laba's counsel be required to take five hours of ethics and ESI training.  Both sides timely filed objections.

SPA-3

A district court is to accept a magistrate judge's report and recommendation unless its findings are clearly erroneous or contrary to law.  28 U.S.C. 636 (b)(1)(C).  If a party objects, the district court is to review *de novo* the portions of the report to which objection is made.  *Id.*  If necessary, the district court may take further evidence or remit the issue to the magistrate judge for further consideration.  *Id.*

JBO objects because it claims that the award also should have included its legal expenses in having to bring its third-party complaint.  JBO had alleged in that complaint that plaintiff had fabricated and compounded claims and allegations, including the claims at bar, as part of a conspiracy to ruin and steal JBO's business.  (ECF 314).  However, the parties had settled all the claims and defenses in the lawsuit, including the third-party complaint, before there had been any significant adjudications of the merits, and without a showing of legal expenses relating specifically to JBO's third-party complaint.  Thus, Judge Parker denied JBO's motion for sanctions with respect to its counterclaim and third-party complaint.  Her findings are solidly based, and I approve them.  In addition, I have examined the issue and the briefs de novo.  JBO's objection to this part of Judge Parker's R&R is rejected.

Laba states several objections: Since Defendant's motion for sanctions mentioned only "plaintiff" and did not mention plaintiff's lawyer, Ken Sussmane, only Laba could be sanctioned; Laba's lawyer should not have been sanctioned because he performed due diligence with respect to the forgery committed by his client; the court was not defrauded because plaintiff did not pursue a claim for breach of a written contract; and the Magistrate Judge should not have addressed the authenticity of the forged signature.  None of Laba's objections has merit.

Again, Judge Parker's rulings are solidly based.  Lawyer Sussmane carried out the fraud of his client and, as his knowing agent, perpetrated the fraud and compounded the

3

SPA-4

proceedings.  Compounding meritless proceedings by fraudulent conduct hurts every other case on the court's docket by usurping scarce judicial management.  Lawyers are officers of the court and not pawns of their clients.  Notice of sanctions to be sought against Laba for a fraud carried out by his lawyer was notice also to Sussmane, the lawyer.  Judge Parker's order of joint and several sanctions and special ethics training was reasonable appropriate.  I have given *de novo* review, and I approve her report and recommendation.

So, too, with the other objections.  For reasons clearly described by Judge Parker, lawyer Sussmane failed to do due diligence; Sussmane's obdurate refusal to acknowledge his client's forgery or the absence of a writing signed by the party to be charged defrauded the court and compounded the proceedings necessary for a determination; and Judge Parker was required to consider the proofs of a transposed and fraudulent signature.  Judge Parker's rulings are not clearly erroneous or contrary to law, and I adopt them and reject plaintiff's and Sussmane's objections after *de novo* review.

## CONCLUSION

For the reasons above, the report of the Magistrate Judge is adopted.  Laba and Laba's attorney are jointly and severally liable to JBO in the amount of $191,364.  Laba's attorney is ordered to take five hours of ethics and ESI training.  The Clerk is instructed to enter judgment and terminate all open motions, closing the case-file.

SO ORDERED.

Dated:      February 12, 2024
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

4

SPA-5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
REMI LABA,

                                   Plaintiff,                                    22 **CIVIL** 3443 (AKH)

                         -against-                                              **JUDGMENT**

JBO WORLDWIDE SUPPLY PTY LTD,

                         Defendant/Third-Party Plaintiff/
                         Fourth-Party Defendant,

                                   -against-
REMI LABA, MARTIN BERGH, WAYNE BEBB,
IAIN BANNER, ROOIBOIS LIMITED,
NATURALLY OUT OF AFRICA PERFECTLY
NATURAL PTY LTD, NOOA CALIFORNIA, LLC,
GEORGES KERN, and BRAND ESSENCE
HOSPITALITY GROUP LLC d/b/a BAGATELLE,
                         Third-Party Defendants/
                         Fourth-Party Plaintiffs.
------------------------------------------------------------------X

          It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Order dated February 12, 2024, the report of the Magistrate Judge is

adopted. Laba and Laba's attorney are jointly and severally liable to JBO in the amount of

$191,364. Laba's attorney is ordered to take five hours of ethics and ESI training.

**Dated:**  New York, New York

          February 12, 2024

                                                            **RUBY J. KRAJICK**
                                                      _____
                                                            **Clerk of Court**

                                   **BY:**
                                                      _Negam Dubl_____
                                                            **Deputy Clerk**

SPA-6



**United States District Court**
**Southern District of New York**

Ruby J. Krajick
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $605 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted.* Please see District Court fee schedule at https://www.nysd.uscourts.gov/programs/fees. If you are unable to pay the $605 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/**.

THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150

Rev. 5/23/14

SPA-7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (    )(    )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties: _____

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the        ☐ judgment        ☐ order        entered on: _____

(date that judgment or order was entered on docket)

that: _____

_____

(If the appeal is from an order, provide a brief description above of the decision in the order.)

_____            _____
Dated                                              Signature*

_____
Name (Last, First, MI)

_____
Address                          City                    State                Zip Code

_____            _____
Telephone Number                            E-mail Address (if available)

_____

*Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

SPA-8

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____              _____CV_____ (      )(      )
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-                                           **MOTION FOR EXTENSION
                                                    OF TIME TO FILE NOTICE
_____              OF APPEAL**

_____
(List the full name(s) of the defendant(s)/respondent(s).)


I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time

to file a notice of appeal in this action. I would like to appeal the judgment

entered in this action on _____ but did not file a notice of appeal within the required
                              date

time period because:

_____

_____

_____
(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)


_____          _____
Dated:                             Signature

_____
Name (Last, First, MI)

_____  _____  _____  _____
Address                    City        State       Zip Code

_____          _____
Telephone Number                   E-mail Address (if available)


Rev. 3/27/15

SPA-9

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (     )(     )

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma pauperis* on appeal. This motion is supported by the attached affidavit.

_____
Dated

_____
Name (Last, First, MI)

_____
Address                    City

_____
Telephone Number

_____
Signature

_____
State                    Zip Code

_____
E-mail Address (if available)

Rev. 12/23/13

SPA-10

## Application to Appeal In Forma Pauperis

_____ v. _____   Appeal No. _____

District Court or Agency No. _____

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.) <br><br> Signed: _____ | Complete all questions in this application and then sign it.  Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number. <br><br> Date: _____ |

My issues on appeal are: (<u>required</u>):

1.     *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | <u>Spouse</u> | You | <u>Spouse</u> |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

SPA-11

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | $ 0 | $ 0 | $ 0 | $ 0 |

2.  *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3.  *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

- 2 -

SPA-12

4.      *How much cash do you and your spouse have?* $_____

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5.      *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| | | Make and year: |
| | | Model: |
| | | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: | | |
| Model: | | |
| Registration #: | | |

- 3 -

SPA-13

6.      *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |

7.      *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

8.      *Estimate the average monthly expenses of you and your family.  Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

|  | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>    Are real estate taxes included? ☐ Yes ☐ No<br>    Is property insurance included? ☐ Yes ☐ No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

- 4 -

SPA-14

Case 1:20-cv-03443-AKH   Document 383-1   Filed 02/12/24   Page 9 of 10

| | | |
|---|---|---|
| Transportation (not including motor vehicle payments) | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | |
|     Homeowner's or renter's: | $ | $ |
|     Life: | $ | $ |
|     Health: | $ | $ |
|     Motor vehicle: | $ | $ |
|     Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $ | $ |
| Installment payments | | |
|     Motor Vehicle: | $ | $ |
|     Credit card (name): | $ | $ |
|     Department store (name): | $ | $ |
|     Other: | $ | $ |
| Alimony, maintenance, and support paid to others | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ | $ |
| Other (specify): | $ | $ |
| **Total monthly expenses:** | $ 0 | $ 0 |

9.    *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

    ☐ Yes    ☐ No    If yes, describe on an attached sheet.

10.    *Have you spent — or will you be spending — any money for expenses or attorney fees in connection with this lawsuit?* ☐ Yes ☐ No

    *If yes, how much?* $ _____

- 5 -

SPA-15

11.     *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12.     *Identify the city and state of your legal residence.*

City _____   State _____

Your daytime phone number: _____

Your age: _____   Your years of schooling: _____

Last four digits of your social-security number:  _____

- 6 -